UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

IGLESIA MISIONERA ASAMBLEA                    CASE NO. 8:08-bk-17956-MGW
  DE DIOS, INC.                                             Chapter 11

      Debtor.
_____/

## DISCLOSURE STATEMENT

### ARTICLE I
### INTRODUCTION

IGLESIA MISIONERA ASAMBLEA DE DIOS, INC., the Debtor in the above styled

Chapter 11 case, hereby provides this Disclosure Statement to all of its known creditors in order

to fully disclose that information deemed by the Debtor to be material, important, and necessary

for their creditors to arrive at a reasonably informed decision in exercising their right to vote for

acceptance of the Debtor's Chapter 11 Plan (hereafter the "Plan").

The United States Bankruptcy Code provides, as a general rule, that in order for a

Chapter 11 Plan to be accepted each class of the claims must accept the Plan.  A class of

creditors whose rights are impaired and altered under the Plan are deemed to have accepted the

Plan if two-thirds (2/3) in dollar amounts and one-half (1/2) in number of those creditors in that

class holding allowed claims and who file a ballot vote for the Plan.  A class of claims which is

not impaired under the Plan is deemed to have accepted the Plan and need not vote.

In the event the Plan is not accepted by at least two-thirds (2/3) in dollar amount and

more than one-half (1/2) in number of the creditors voting in any impaired class, the Debtor,

under Section 1129(b) of the Bankruptcy Code, may request the Court to confirm the Plan

anyway. The Court in such a case will confirm the Plan if all requirements for confirmation set forth in the Bankruptcy Code, except acceptance by one or more classes of creditors are met and the Court finds the Plan to be "fair and equitable" to the non-accepting classes. In the event the Debtor is unable to obtain the vote of its unsecured creditor class, the Debtor may be required to overcome an objection based on the "absolute priority rule." The absolute priority rule generally provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a plan. If there is a "cramdown", the equity owners of the debtor would be required to have an auction for their equity interest in the Debtor or they would have to contribute "new value" ( purchase their equity for an amount the Court determines is sufficient). If the Plan is not accepted by all classes, the Debtor may be liquidated under Chapter 7 of the Bankruptcy Code. In that event, the Debtor's assets would be liquidated and distributed to the creditors after the payment of all costs of administration and the payment of priority claims.

The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be borne by the Debtor as an Administrative Expense. In addition, the Debtor has retained the services of the law firm of Morse & Gomez, P.A., 119 South Dakota Avenue, Tampa, Florida 33606, in connection with the preparation of the Plan. The payment of fees, however, is contingent upon approval by the Bankruptcy Court after notice is given to all creditors and other interested parties.

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY PROMISSORY NOTES TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS**

DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN IS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE.

THE DEBTOR'S PLAN, IF CONFIRMED, WILL BE A LEGALLY BINDING DOCUMENT.  CREDITORS AND PARTIES IN INTEREST SHOULD CONSULT WITH COUNSEL TO DETERMINE WHAT EFFECT, IF ANY, THE DEBTOR'S PLAN WILL HAVE ON THEM.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT.  THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON ACCOUNTING PERFORMED BY OTHERS.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S PRINCIPALS, HOWEVER, FOR THE FOREGOING REASONS, AS WELL AS BECAUSE OF THE GREAT COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

## ARTICLE II
## BACKGROUND OF DEBTOR

The Debtor is a Florida not for profit religious organization consisting of a church.  The Debtor began its operation in approximately April, 1967.  Ricardo Rodriguez ("Pastor

Rodriguez") is the Debtor's President and Church Pastor.  The Debtor has one (1) employee, not including Pastor Rodriguez.  The Debtor is the largest Hispanic church in Hillsborough County. Its congregation exceeds 1,200 members.  The Church is a constituent of the Assemblies of God of the United States with its headquarters in Springfield, Missouri.

The Debtor is located at 10651 Anderson Road, Tampa, Florida ("Church").   The Debtor owns the real estate and all improvements therein—namely the Church facility.

The primary reason the Debtor filed its Chapter 11 Petition stems from its need to reorganize its financial obligations caused primarily by losses incurred by the Debtor as a result of its general contractor breaching its contract and failing to complete the construction of the Debtor's Church facility in a timely and workmanlike manner.   Losses and costs were compounded because the general contractor failed to pay its subcontractors and then undertook a "good offense is your best defense" approach to the dispute by unleashing a costly and time consuming litigation strategy against the Debtor.   The general contractor, Kalemeris Construction Company ("General Contractor"), initially filed its lawsuit against the debtor for breach of construction contract and construction lien foreclosure.  The Debtor responded by filing a motion to dismiss due to Kalemeris' failure to comply with the mediation and arbitration provisions of the contract.  The lawsuit was stayed pending resolution of the arbitration.

The Debtor then filed its counterclaim against the General Contractor for failing to fully and properly perform the roofing work required of the contract which resulted in water intrusion and attendant physical damages to the church.  The Counterclaim also seeks damages for the Contractor's failure to provide an adequate air-conditioning system, providing doors of inferior quality than called for in the contract, and for poor and faulty installation and finishing of the

drywall throughout the Church.    The arbitration proceeding is in the beginning stages of discovery.

The majority of the Debtor's income is comprised of offerings, tithes and pledges from parishioners.  The average monthly amount fluctuates, but is approximately $60,000 to $65,000 per month.  Prior to 2005, the Debtor owned a Church located at 10144 W. Lemon Street.  Based upon an eminent domain/condemnation action, the Debtor was forced to leave its former location.    The Debtor acquired the land at its current location and paid $475,000 for the acquisition of the land in 2002.  From 2005 through 2007, the Debtor began construction of a building for a church and day care program.  During the construction phase, the Debtor leased a facility it utilized for its church services.  The monthly lease was $10,000 per month including storage.

The total contract price for the new Church facility was $3,457,000, not including any change orders.  The anticipated completion date was twelve (12) months from the contract date.  The Debtor hired the General Contractor to build its new Church facility.    During the construction of the church facility, the Debtor discovered that the General Contractor did not pay all the sub-contractors, materials and that the roof of the building had been improperly installed, giving rise to major water intrusion and leaks that persist to this day.  The defective installation of the roof was confirmed and certified by an expert who was recommended by the manufacturer of the building, American Buildings, Inc, which manufacturers pre-fabricated buildings, such as the Debtors.  American Buildings, Inc's expert prepared an extensive report detailing the General Contractors negligent and shoddy installation.

Instead of the twelve-month completion date, the project lasted for approximately twenty-six (26) months.  Because of the General Contractor's breach, approximately an additional

$500,000 was still required to pay approximately thirty (30) subcontractors and another $500,000 to $650,000 to attempt to fix the roof. Because the General Contractor did not perform and pay the subcontractors, constructions liens or claims of liens were recorded. The Debtor also suffered a 14-month delay in the completion of the project that diminished its cash reserves of approximately $300,000 because the Debtor was required to pay rent at the leased church and service its mortgage at the same time. Essentially, the Debtor was paying for two (2) locations.

In order to avoid litigation and hopefully finish the project, the Debtor began making payments to the sub-contractors directly. Consequently, the Debtor was unable to make its payments to the Assemblies of God Loan Fund ("Mortgagee") who threatened to foreclose on the real estate. Mortgagee and the Debtor entered into a forbearance agreement to avoid foreclosure.

## ARTICLE III
## AVOIDANCE ACTIONS/LITIGATION

The Debtor has not initiated any preference, fraudulent transfer or other actions under Subchapter III of Chapter 5 of the Bankruptcy Code. The Debtor has analyzed the possibility of avoiding and recovering, as Debtor in possession, preferential or fraudulent transfers pursuant to Sections 544, 547, 548, and 550 of the Bankruptcy Code and applicable nonbankruptcy law. The Debtor is unaware of any preferential or fraudulent transfers either intentional or constructive, subject to avoidance and recovery by it as a Debtor in possession.

### Mediation

As previously mentioned, the principal cause of the Chapter 11 filing relates to the construction of the Church Facility and dispute between the Debtor and its General Contractor. The Debtor, it's General Contractor and Assemblies of God Loan Fund have all engaged in settlement negotiations but no definitive agreement has been forthcoming. As a result, the

parties have agreed to mediate their disputes and the Debtor has obtained authority to file its Motion Requesting Mediation of Any and All Disputes and Contested Matters by and between the parties.  The Debtor is hopeful that this mediation will provide a "global settlement" whereby the Debtor's treatment of its creditors can be incorporated into this Disclosure Statement and Plan.  The Debtor anticipates that mediation will be set within the next sixty (60) days.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND INTERESTS

4.1    Classification of Claims and Interests.

(a)    Classification.

(1)    General.  Article II of the Plan sets forth the designation of Classes of Claims and Interests.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.

(2)    Unclassified Claims.  In accordance with §1123(a) of the Bankruptcy Code a Plan must place into classes all of the claims against an interest in the Debtor, the only exceptions being Administrative Claims, Involuntary Gap Claims (if any) and Priority Tax Claims, none of which vote on the Plan.  These claims, which are excluded from classification, are treated elsewhere in Chapter 11.

4.2    Classes.  For the purposes of the Plan, the Claims against, or Interests in, the Debtors are grouped in the following Classes in accordance with §1122(a) of the Bankruptcy Code:

1.      Class 1 (Impaired) consists of the claim of Assemblies of God Loan Fund ("AG Financial Solutions") or the Mortgagee who is owed approximately $4,453,000.00 in principal and interest, which debt is secured by a note and mortgage on the Debtor's Real Property located at 10651 Anderson Road, Tampa, Florida.  Please see treatment in § 4.5 herein.

2.      Class 2 (Impaired) consists of the Claim of Kalemeris Construction, Inc. ("General Contractor") in the approximate amount of $1,050,756.24.  Please see treatment in § 4.5 herein.

3.      Class 3 (Impaired) consists of the various claims of lien of Sub-Contractors recorded in the Official Records of Hillsborough County, Florida against the Debtor's Real Property in the total approximate amount of $390,740.35.  Please see treatment in § 4.5 herein.

4.      Class 4 (Impaired) consists of the claim of World Omni Financial Corp. ("Toyota") in the approximate amount of $26,436.16, which debt is secured by a lien on the Debtor's 2007 Toyota Minivan.  Please see treatment in § 4.5 herein.

5.      Class 5 (Impaired) consists of the Claims of General Unsecured Creditors. Please see treatment in § 4.5 herein.

4.3    Classes of Claims Not Impaired by the Plan.  Administrative Claims are not impaired by the Plan.  Under §1126(f) of the Bankruptcy Code, the holders of those Claims are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those holders shall not be solicited.  It is estimated that the estimated administrative fees and costs shall be approximately $50,000.00.

4.4    Classes of Claims Impaired by the Plan.  Classes 1, 2, 3, 4, and 5 claims are impaired by the Plan.

4.5     Treatment of Allowed Claims and Allowed Interests.

(a)     General.  The Allowed Claims and Allowed Interests, as classified in Article II of the Plan, shall be satisfied in the manner set forth in Article II of the Plan.  The treatment of, and the consideration to be received by, holders of Allowed Claims and holders of Allowed Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Interests.  The following constitutes the treatment under the Plan of the Allowed Claims and Allowed Interests:

1.      The Debtor shall pay the secured claim of Class 1 by making sixty (60) equal monthly payments at 6% interest per annum, amortized over thirty (30) years, in the amount of $26,697.98 per month beginning upon the Effective Date of the Plan over a period of a 60-month term.  The balance of the Class 1 claim will be due and payable at the end of the 60-month term when the outstanding balance will balloon unless AG Financial Solutions agrees that the term can be extended.  The terms of the original note and mortgage shall remain in full force and effect except as modified herein.

2.      The Debtor objects to the claim of Class 2 and believes that the General Contractor is not owed any amounts and may in fact owe the Debtor money based on the Debtor's counterclaim.  This dispute will be either resolved amicably between the parties or the Court will need to resolve same.

3.      The Debtor also disputes the claims of Class 3.  The Debtor shall pay the allowed secured claims of Class 3 by making sixty (60) equal monthly payments at 6% interest per annum, amortized over ten (10) years, in the amount of $4,338.00 per month beginning upon the Effective Date of the Plan over a period of a 60-month term.  This assumes that the Debtor agrees to the full amount alleged to be owed.  The balance of the Class 3 claim will be due and

payable at the end of the 60-month term when the obligation will balloon, unless Class 3 claimants agree to extend the term.

4.    The Debtor shall pay the secured claim of Class 4 in sixty (60) equal monthly payments at 5% interest per annum in the amount of $498.88 per month beginning upon the Effective Date of the Plan.

5.    The Debtor will pay the unsecured creditors approximately 35% of their total allowed claims in sixty (60) equal monthly payments beginning upon the Effective Date of the Plan. Based upon the Debtors estimated total of allowed claims, the total unsecured claims are approximately $47,213.00.

In order to avoid the cost and inconvenience of issuing small denomination checks, any prorated quarterly payment that does not equal at least two hundred fifty ($250) dollars may be accrued and not paid until the prorated amount equals at least two hundred fifty ($250) dollars. Unsecured creditors will not receive a promissory note and no interest will accrue. The terms of the Debtor's Plan will bind the parties and control the Debtor/creditor relationship between the parties.

(b)    <u>Administrative Claims</u>. Each holder of an Allowed Administrative Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Administrative Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date; provided, however, that Allowed Administrative Claims representing (a) post-petition liabilities incurred in the ordinary course of business by the Debtors and (b) post-petition contractual liabilities arising under loans or advances to the Debtors, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in accordance with the terms and conditions of the particular transactions

relating to such liabilities and any agreements relating thereto. Administrative claims are estimated to be approximately $50,000.00.

(c)    Priority Tax Claims--Other than ad valorem real property and tangible taxes (Classes 2 and 3). Each holder of an Allowed Priority Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Priority Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date. The obligations under this Section with respect of any Allowed Priority Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefore. This includes any sales tax claims. Debtor does not believe any amounts are owed.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES AND RELEASE AND DISCHARGE

5.1    Executory Contracts and Unexpired Leases: All executory contracts or unexpired leases that have not been assumed and/or assigned by an Order of the Bankruptcy Court or that are not to be expressly assumed under the Debtor's Plan shall be deemed Rejected Contracts as of the Effective Date.

5.2    Release and Discharge: The rights afforded to the holders of Claims by and in this Plan shall be in exchange for and in complete release, satisfaction, and discharge, to the fullest extent permitted by applicable law, of all claims of any nature whatsoever against the Debtor. This release and discharge shall be effective as of the Effective Date.

## ARTICLE VI
## PRESENT OPERATION

The Debtor is presently operating as a Debtor-in-Possession ("DIP") and proposes this Disclosure Statement and Plan to restructure its financial affairs and continue operating. The Debtor is located at 10651 Anderson Road, Tampa, Florida ("Church"). The Debtor owns the real estate and all improvements therein—namely the Church facility. More detailed information is set forth in the Debtor's "Bankruptcy Schedules" and "Case Management Summary" which are filed with the Bankruptcy Court and are a matter of record. The Debtor is not sure, given the current real estate market whether it has equity in the Church Facility. The uncertainty relating to the value of the Church Facility is compounded by the fact that the existing roof is in such a state of disrepair that estimates to fix same range from $150,000 for a patch job to $500,000 to replace the roof. The Debtor may choose to file a Motion to Value and Determine Secured Status pursuant to 11 U.S.C. § 506 of the Bankruptcy Code if a consensual agreement with its creditors is not forthcoming.

## ARTICLE VII
## THE REORGANIZED DEBTOR

Following confirmation, the Debtor will continue to be governed by a Board of Trustees consisting of the following individuals:

Pastor Ricardo Rodriguez
Jose Garcia
Jose Reyes
Marina Perez
Miguel Rivera
Raul Ortiz
William Carillo

Pastor Ricardo Rodriguez will continue as the Debtor's President and Church Pastor. Jose Reyes will continue as the Debtor's Treasurer/Director, Marina Perez will continue as the

Debtor's Secretary/Director, and Jose Garcia, Miguel Rivera, Raul Ortiz, and William Carillo will continue as the Debtor's Directors. Heritage Small Business Consulting Services, Inc., owned and operated by the Debtor's Treasurer, Jose Reyes, will continue to provide bookkeeping services to Debtor.

Pursuant to the Court's Order Approving Salary entered on December 5, 2008, the Debtor is authorized to pay its President, Pastor Ricardo Rodriguez, the monthly amount of $2,166.67 and monthly employment benefits as set forth in the Debtor's Application for Authority to Pay Officer's Salary. Additionally, the Debtor is also authorized to pay Heritage Small Business Consulting Services, Inc. the monthly amount of $500 for post-petition accounting services as set forth in the Debtor's Application for Authority to Pay Officer's Salary.

All members of the Board of Trustees are members of the Debtor and serve on the Board as volunteers. No member of the Board of Trustees, with the exception of Pastor Rodriguez and Mr. Reyes as described above, receive or will receive compensation from the Debtor post confirmation.

## ARTICLE VIII
## DEBTOR'S EFFORTS TO FACILITATE REORGANIZATION

The Debtor has filed a Chapter 11 in order to restructure its financial affairs. For instance, the Debtor has actively pursued all steps necessary to implement a day care center. The Church Facility was originally constructed to include a day care center and the Debtor has completed its due diligence relating to the day care center to such a point where the Debtor will be filing a Motion to Approve the Establishment of the Day Care Center in the immediate future. The Debtor estimates that its day care center could significantly increase the Debtor's revenue thereby facilitating reorganization of the Debtor's case and compliance with its confirmed Plan.

The additional revenue from the day care center is reflected in the Debtor's cash flow proforma, or Exhibit "C", which is attached to this Disclosure Statement.

## ARTICLE IX
## LIQUIDATION ANALYSIS

A Chapter 11 plan cannot be confirmed unless the Bankruptcy Court finds that the plan is in the "best interests" of creditors and equity holders, taking into account the liquidation value of the debtor.  In applying the "best interests" test of § 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court would ascertain the hypothetical recoveries in a Chapter 7 liquidation to secured creditors, priority claimants, general unsecured creditors and equity holders.  These hypothetical Chapter 7 liquidation recoveries would then be compared to the distributions offered to each class of claims or interests under the proposed Chapter 11 plan to determine if the plan satisfies the "best interests" test as set forth in § 1129(a)(7) of the Bankruptcy Code.  A liquidation analysis is attached hereto as Exhibit "A" and by reference incorporated herein.

Other Alternatives to the Plan.  If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different Chapter 11 plan or convert the Bankruptcy Case to a Chapter 7.

**THE DEBTOR BELIEVES THAT THE CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO THE CHAPTER 7 LIQUIDATION ALTERNATIVE BECAUSE THE PLAN SHOULD PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN A CHAPTER 7 LIQUIDATION.**

## ARTICLE X
## INCOME AND EXPENSE STATEMENT SINCE FILING PETITION

See attached Exhibit "B".

## ARTICLE XI
## PROJECTED INCOME AND EXPENSES FOR LIFE OF PLAN

See attached Exhibit "C".

## ARTICLE XII
## SUMMARY OF PLAN OF REORGANIZATION

Since this is not a "mega" Chapter 11 case,  the Debtor's Plan is short enough wherein a summary of the Plan of Reorganization would not be helpful in the opinion of the Debtor.

## ARTICLE XIII
## MEANS OF EXECUTION OF THE PLAN/FUNDING OF PLAN

Debtor shall make payments under the Plan from the regular collection of tithes and offerings from the operation of its Church Facility.

## ARTICLE XIV
## EFFECTIVE DATE

The Effective Date of the Plan shall be thirty (30) days after confirmation of the Plan. Debtor shall continue adequate protection payments or payments approved by the Court to until the Effective Date of the Plan.

## ARTICLE XV
## CRAM DOWN

If Debtor does not initially obtain sufficient votes to approve the Plan of Reorganization, Debtor will attempt to obtain a cram down of the Plan of Reorganization.

## ARTICLE XVI
## RETENTION OF LIENS

All secured creditors shall retain their liens on their respective collateral until their secured claims are paid in full.  All notices, mortgages, security agreements shall remain in full force and effect except as modified by the Plan.

## ARTICLE XVII
## RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction as provided for by the Bankruptcy Code and other applicable law.  The Bankruptcy Court will retain Jurisdiction to determine all issues related to the Debtor's Plan including enforcement of any plan default.

## ARTICLE XVIII
## AMOUNT OF CLAIMS

The amount of claims provided for in the Plan are for informational purposes only and do not bind the parties.  The amount of the claim to be paid to each creditor shall be determined by the Debtor's Schedules and Proofs of Claim filed by each individual Creditor, if not objected to or disallowed by Court Order.

Dated this 22nd day of January, 2009.

José Reyes, Treasurer/Director
of Iglesia Misionara Asamblea de Dios, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing DISCLOSURE STATEMENT has been furnished either by the Court's CM/ECF system or by U.S. Mail, first class postage prepaid, this 22nd day of January, 2009, to the **United States Trustee**, 501 E. Polk St., Suite 1200, Tampa, FL 33602 and **Iglesia Misionera Asamblea de Dios, Inc.,** 10651 Anderson Rd., Tampa, FL 33625.

/s/ Alberto F. Gomez, Jr.
ALBERTO F. GOMEZ, JR.
Florida Bar No. 784486
MORSE & GOMEZ, PA
119 South Dakota Avenue
Tampa, Florida 33606-1813
Telephone: (813) 301-1000
Telecopier: (813) 301-1001
Counsel for Debtor

F:\Shared Office Files\Iglesia Church\Pleadings\Disclosure Statement 01-22-09.doc

Exhibit "A"

**IGLESIA MISIONERA A.D. INC.**
**LIQUIDATION ANALYSIS**
**1/22/2009**

| Asset Description: | Book Value | Liquidation Value |
|---|---|---|
| Land and Building | $  6,000,000.00 | $  3,000,000.00 |
| Equipment (Sound, Video systems, pews, Office furniture) | 150,000.00 | 50,000.00 |
| Toyota Minivan | 25,000.00 | 15,000.00 |
| Counter Claim against Kalemeris Construction | Unknown | Unknown |
| Total | $  6,175,000.00 | $  3,065,000.00 |

Exhibit "B"

**Schedule B**

# IGLESIA MISIONERA A.D. INC.

### SCHEDULE OF POST PETITION MONTHLY CASH FLOW PROJECTIONS
### YEAR 2009

DIP CASE:
PETITION DATE:

| CASH SOURCES: | Feb. | Mar. | Apr. | May | Jun. | Jul. | Aug. | Sept. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Funds Beg of Period | 80,000.00 | 51,704.00 | 53,408.00 | 55,612.00 | 64,816.00 | 77,120.00 | 83,249.00 | 92,378.00 | 108,482.00 | 124,611.00 | 139,740.00 |
| Cash Receipts | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 |
| Day Care Revenue | - | - | 10,000.00 | 15,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 25,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| Refinancing Proceeds | - | - | - | - | - | - | - | - | - | - | - |
| **Total Funds Available:** | $ 140,000.00 | $ 111,704.00 | $ 123,408.00 | $ 130,612.00 | $ 144,816.00 | $ 157,120.00 | $ 163,249.00 | $ 177,378.00 | $ 198,482.00 | $ 214,611.00 | $ 229,740.00 |

| CASH USES: | Feb. | Mar. | Apr. | May | Jun. | Jul. | Aug. | Sept. | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Advertising | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 2,000.00 | 2,000.00 | 25.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Auto Expense | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Cleaning Expense | 2,400.00 | 2,400.00 | 2,400.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Departmental Expenses | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Dues and Subscriptions | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Day Care Expenses | - | - | 5,000.00 | 5,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 8,000.00 | 8,000.00 |
| Insurance | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Leases | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Legal Expenses (Adm. Claim) | 25,000.00 | 25,000.00 | - | - | - | - | - | - | - | - | - |
| Love Offerings | - | - | - | - | - | - | - | - | - | - | - |
| Mortgage Payments | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 | 26,436.00 |
| Net Payroll | 5,400.00 | 5,400.00 | 6,900.00 | 6,900.00 | 6,900.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 10,000.00 | 10,000.00 |
| Office Expense | 1,000.00 | 1,000.00 | 1,000.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Payroll Taxes | 500.00 | 500.00 | 500.00 | 700.00 | 700.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| Purchase of Fixed Assets | 30,000.00 | - | - | - | - | - | - | - | - | - | - |
| Repairs and Maintenance | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Stipends | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| US Trustee Fees | - | - | 3,000.00 | - | - | 3,000.00 | - | - | 3,000.00 | - | - |
| Utilities | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Telephone | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| Transportation | - | - | - | - | - | - | - | - | - | - | - |
| Other: Payments to Creditors | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 | 3,035.00 |
| Other: | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Uses** | $ 113,296.00 | $ 83,296.00 | $ 67,796.00 | $ 65,796.00 | $ 67,696.00 | $ 73,871.00 | $ 70,871.00 | $ 68,896.00 | $ 73,871.00 | $ 74,871.00 | $ 74,871.00 |
| **Ending Balance:** | $ 26,704.00 | $ 28,408.00 | $ 55,612.00 | $ 64,816.00 | $ 77,120.00 | $ 83,249.00 | $ 92,378.00 | $ 108,482.00 | $ 124,611.00 | $ 139,740.00 | $ 154,869.00 |

Exhibit "C"

Schedule A

# IGLESIA MISIONERA A.D. INC.
SCHEDULE OF POST PETITION MONTHLY CASH FLOW PROJECTIONS
YEARS 2010 - 2013

DIP CASE:
PETITION DATE:

| | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|
| **CASH SOURCES:** | | | | |
| Funds Beg. of Period | 158,700.00 | 296,450.00 | 351,450.00 | 406,450.00 |
| Cash Receipts including Day Care | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 |
| **Total Funds Available:** | $ 1,358,700.00 | $ 1,496,450.00 | $ 1,551,450.00 | $ 1,606,450.00 |
| **CASH USES:** | 2010 | 2011 | 2012 | 2013 |
| Advertising | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Auto Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Cleaning Expense | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| Departmental Expenses | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 |
| Dues and Subscriptions | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Insurance | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| Leases | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| Day Care Expenses | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Love Offerings | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Mortgage Payments | 317,250.00 | 317,250.00 | 317,250.00 | 317,250.00 |
| Net Payroll | 250,000.00 | 250,000.00 | 250,000.00 | 250,000.00 |
| Office Expense | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| Payroll Taxes | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| Purchase of Fixed Assets | - | - | - | - |
| Repairs and Maintenance | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Stipends | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| US Trustee Fees | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Utilities | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| Telephone | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Transportation | - | - | - | - |
| Other: Payments to Creditors | 37,000.00 | 37,000.00 | 37,000.00 | 37,000.00 |
| **Total Cash Uses:** | 1,062,250.00 | 1,062,250.00 | 1,062,250.00 | 1,062,250.00 |
| **Ending Balance:** | 296,450.00 | 351,450.00 | 406,450.00 | 461,450.00 |